Daniel Libbey
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
Phone: (907) 258-1815
Fax: (907) 258-1822
dan@libbeylaw.com

Attorney for Plaintiff Gabrielle Chipps

Colleen Libbey
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
Phone: (907) 258-1815
Fax: (907) 258-1822
colleen@libbeylaw.com

Attorney for Plaintiff Holly Chipps

Les Syren
Syren Law Offices
P.O. Box 112141
Anchorage, Alaska 99511
Phone: (907) 345-8333
Fax: (907) 345-8952
syrenlawoffices@yahoo.com

Attorney for Plaintiff Timothy Chipps

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| GABRIELLE CHIPPS, by and through her guardians, Holly Chipps and Timothy Chipps, and HOLLY CHIPPS and TIMOTHY CHIPPS, individually, | ) ) ) ) ) | COMPLAINT FOR DAMAGES Case No:_____ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |

COMPLAINT                                                          Page 1 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 1 of 63

STATE OF ALASKA, DEPARTMENT )
OF CORRECTIONS, SHANNON )
MCCLOUD, JAMES MILBURN, )
GERAD SIAMANI, BETH SELBY, )
and DOES 1-10, Inclusive, )
)
                    Defendants, )
_____)

## COMPLAINT
### (42 U.S.C § 1983—Violation of Civil Rights)

Gabrielle Chipps, by and through her guardians, Holly Chipps and Timothy Chipps, and Holly Chipps and Timothy Chipps, individually, by and through counsel, Libbey Law Offices LLC, and Syren Law Offices, bring this lawsuit against the State of Alaska, Department of Corrections ("SOA, DOC"), Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, and Does 1-10, and allege as follows:

## I.    Introduction

This is a Section 1983 civil rights action, and negligence action, brought under federal and state laws.  On February 8, 2020, 21-year-old Gabrielle Chipps ("Gabby") attempted suicide in her isolated segregation cell while in the care of SOA, DOC.  Upon her arrival to Wildwood Pretrial Facility on January 22, 2020, SOA, DOC placed Gabby on suicide precautions and restricted her from being in possession of any sharps or razors that she could use to harm herself with.

Despite having actual notice more than 10 years prior to this incident that its policies and practices for suicide prevention and segregation housing were in violation of federal standards and protocols, SOA, DOC continued in these dangerous policies.  This resulted in many unnecessary inmate deaths, and caused Gabby's injuries in this case.

COMPLAINT                                                    Page 2 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 2 of 63

SOA, DOC had many policies and procedures in place requiring suicide prevention actions to be taken for the safety of inmates like Gabby on suicide precautions. Despite having ample notice that its policies and practices were in violation of national standards, and despite being well aware of Gabby's high risk for suicide, SOA, DOC violated its own policies and procedures and failed to monitor and supervise Gabby after placing her in segregation housing, or to take any steps for her safety while she was in SOA, DOC care.

As a disciplinary measure, Gabby was left unmonitored, ignored, and neglected in her isolated segregation cell, in violation of SOA, DOC policy and national standards and protocols. During this time, having been unmonitored, ignored, and neglected in her isolated segregation cell, Gabby hanged herself from her bedsheet wrapped around her neck and attached to her window without ever being checked by SOA, DOC officials. By the time she was finally checked by officials, Gabby had suffered severe permanent physical injury, and had become non-responsive.

Following Gabby's suicide attempt, and despite her immediate life-threatening condition, SOA, DOC waited five hours before attempting to notify Gabby's parents, Timothy and Holly Chipps, of the circumstances and of her condition. This failure to notify Gabby's parents was in violation of SOA, DOC's policies and procedures on notification of family members in these circumstances.

Gabrielle is alive, but with serious and permanent debilitating physical injuries, requiring continued and extensive medical care for the rest of her life. But for SOA, DOC's reckless and repeated violations of their own policies and procedures in failing to address Gabby's high risk of suicide, including but not limited to, the failure to properly monitor

COMPLAINT                                                                      Page 3 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 3 of 63

her and provide her with necessary mental health treatment, Gabby would not have suffered these injuries.

## II.     Jurisdiction and Venue

1.     Jurisdiction is conferred upon this court pursuant to 28 U.S.C. Sections 1331 and 1343, and arises under 42 U.S.C. Sections 1983 and 1988. All Alaska state law claims pleaded are within the supplemental jurisdiction of the court pursuant to 28 U.S.C. Section 1367.

2.     The relevant incidents complained of occurred in Third Judicial District of Alaska, therefore, venue is appropriate and properly lies with the court under 28 U.S.C. Section 1391.

## III.     Parties

### A. Plaintiffs

3.     Plaintiff Gabrielle Chipps is, and was at all relevant times hereto, an individual residing in the state of Alaska. Since February 8, 2020, she has been mentally incompetent, due to the physical injuries suffered as a result of the subject matter of this action, for the purposes of all legal proceedings.

4.     Plaintiff Holly Chipps is the mother and co-guardian/conservator of Gabrielle Chipps with standing to bring this action. Pursuant to Alaska Statutes 13.26.201-316 and 13.26.401-595, Holly Chipps was appointed co-guardian/conservator of Gabrielle Chipps by Alaska Superior Court Judge Jennifer S. Henderson on March 5, 2020.

5.     Plaintiff Tim Chipps is the father and co-guardian/conservator of Gabrielle Chipps with standing to bring this action. Pursuant to Alaska Statutes 13.26.201-316 and

COMPLAINT                                                                        Page 4 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 4 of 63

13.26.401-595, Tim Chipps was appointed co-guardian/conservator of Gabrielle Chipps by Alaska Superior Court Judge Jennifer S. Henderson on March 5, 2020.

**B. <u>Defendants</u>**

6.      Defendant State of Alaska, Department of Corrections, at all relevant times is the state of Alaska, and at all relevant times was inside the Third Judicial District of Alaska.

7.      On information and belief, Defendant Shannon McCloud is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a superintendent employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity.

8.      On information and belief, Defendant James Milburn is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was an assistance superintendent employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity.

9.      On information and belief, Defendant Gerad Siamani is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a correctional officer employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity.

10.      On information and belief, Defendant Beth Selby is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a mental health clinician employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity.

COMPLAINT                                                                                                    Page 5 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 5 of 63

11.     Plaintiff does not know the true names of Defendant Does 1-10, and will amend the complaint to add the true names of the Doe Defendants when their identity is determined through discovery.

12.     On information and belief, Doe Defendants 1-10 are residents of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint, Defendant Does 1-10 were employed by the State of Alaska, Department of Corrections.  Defendant Does 1-10 are sued in their personal capacity.

13.     On information and belief, each of the Doe Defendants were responsible in some manner for the acts and omissions alleged herein, and Plaintiffs will seek leave to amend and allege true identities and the respective responsibility when that information is ascertained through discovery.

### IV.     <u>Factual Background</u>

**A. Despite Actual Notice More Than 10 Years Prior to This Incident of Policies and Practices in Violation of Federal Standards and Protocols, SOA, DOC Continued in These Dangerous Policies, Resulting in Many Unnecessary Inmate Deaths and Causing Gabby's Serious Permanent Injuries in This Case.**

14.     In 2008 and 2009, the American Civil Liberties Union of Alaska ("ACLU"), with the assistance of Yale Law School, conducted an in depth and detailed inspection and review of the SOA, DOC with the cooperation of the Commissioner of SOA, DOC.

15.     The ACLU worked closely with the special assistant to the Commissioner of SOA, DOC in developing drafts of the reports and in obtaining important data and information for the final report.

COMPLAINT                                                                    Page 6 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 6 of 63

16.     The ACLU published the final report of its inspection and review of SOA, DOC in March 2010.

17.     In its findings, the ACLU found SOA, DOC suicide prevention policies to be in violation of national standards for suicide prevention in jails.

18.     In 2008, the National Commission on Correctional Health Care ("NCCHC") stated that inmates at risk for suicide should not be placed in segregation except where they are continually monitored, and instead should be housed in general population, a medical health unit, or medical infirmary, where they can be located close to staff and in cells with no protrusions of any type that could be used by an inmate for hanging.

19.     In 2010, SOA, DOC policy violated NCCHC standards by failing to require that inmates on suicide precautions are continually monitored while on suicide precautions in segregated housing.

20.     2010 SOA, DOC policy for inmates on suicide precautions provided two housing options, one "in general population with other prisoners, observed and closely supervised by staff" and another in "single cell/segregation" housing with close supervision which "may include" observation "every five to 15 minutes."  Neither of these housing options complied with the 2008 NCCHC standard of continual monitoring for inmates on suicide precautions in segregation.

**B. SOA, DOC Policy More Than 10 Years Ago Violated NCCHC Standards By Universally Placing Inmates On Suicide Precautions Into Segregation Units and Violating Protocols for Assessment and Treatment of Suicide Risk Inmates.**

COMPLAINT                                                                                      Page 7 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 7 of 63

21.     More than 10 years ago, SOA, DOC policy was to place inmates on suicide precautions in segregated housing, as is demonstrated by SOA, DOC Policy form 807.20A, which states in pertinent part: "Suicide Precautions: Subject prisoner is considered a risk for suicide.   Accordingly, the following suicide precautions are recommended.  <u>This prisoner is hereby recommended for placement in segregation by a mental health or medical professional.</u>"  (emphasis in original).

22.     This policy is confirmed through numerous interviews conducted by ACLU more than 10 years ago showing SOA, DOC inmates on suicide precautions were nearly universally placed in seclusion by SOA, DOC in a segregation unit or intake cell.

23.     In 2008, the National Commission on Correctional Health Care recommended that prison health care providers identify and address the underlying reasons for the inmate's risk of suicide, as well as the treatment needs when the inmate is at heightened suicide risk, and follow-up treatment and strategies to prevent relapse.

24.     The inmates interviewed by ACLU more than 10 years ago, however, reported both that they were placed in segregation as a result of their suicide risk, and that they did not receive any ongoing or follow-up treatment to address the underlying reasons for their suicide risk or mental health concerns.

**C. In 2015, A Governor Ordered Review of SOA, DOC Cited a Study Finding Inmates in Segregation Units Were Significantly More Likely to Commit Suicide, and Found Suicide Prevention Policy Had Not Been Updated In 20 Years.**

25.     In 2015, the governor of Alaska appointed a team to conduct an administrative review on SOA, DOC, and issue a report, following several inmate deaths.

COMPLAINT                                                                                           Page 8 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 8 of 63

26.     The 2015 report documented that the SOA, DOC had not updated its suicide awareness and prevention policy for 20 years.

27.     The 2015 review cited to studies reporting on the negative impacts of segregation on inmates.

28.     One such study cited by the 2015 report found that inmates with mental illness placed in segregated housing were significantly more likely to commit acts of fatal self-harm.

29.     The 2015 report documented that SOA, DOC's policies and practices on the use of segregated housing for inmates warranted review "to ensure that it is being used sparingly and appropriately."

**D. The 2015 Review Expressed Concern that the Department of Law Was Trying to Prevent SOA, DOC From Documenting Facts Surrounding Inmate Deaths and That Many Officers Had Not Received Updated Training in Many Years.**

30.     The 2015 report documented concern about the level of involvement that the Alaska Department of Law exercised in implemented SOA, DOC "policies and operations."

31.     The 2015 report interviewed SOA, DOC personnel that explained the Alaska Department of Law "expressed concern that documenting all the facts" surrounding inmate deaths "might make it easier for the state to be found financially liable for the death."

32.     The 2015 report found this to be an overreach of the Alaska Department of Law's relationship with SOA, DOC.

COMPLAINT                                                                          Page 9 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 9 of 63

33.     The 2015 report interviewed correctional officers who explained that the Correctional Officer Academy was referred to as the "academy way" that work was to be done, and this differed from the "real way" work was done in SOA, DOC institutions.

34.     The 2015 report documented that many correctional officers had not received updated training courses in many years.

35.     The 2015 report recommended that all SOA, DOC policies be updated within six months.

36.     The 2015 report recommended that SOA, DOC prioritize the reduction in use of segregated housing.

37.     The 2015 report recommended that the Alaska Department of Law not be in a position of acting as "gatekeeper" in the SOA, DOC policy approval process.

38.     The 2015 report recommended that SOA, DOC develop "policies and practices" for the proper initial training, and continual assessment and training of all correctional officers.

**E. Despite Ample Notice, SOA, DOC Policies and Practices Fail to Monitor and Fail to Provide Mental Health and Medical Treatment, Resulting In Numerous Inmate Deaths, and Permanent Injuries to Gabrielle Chipps.**

39.     On April 4, 2014, inmate Devon Mosely died in his segregation cell after SOA, DOC failed to monitor and failed to provide mental health care and medical care while Mr. Mosely was in his segregation housing.

40.     On April 10, 2014, inmate April Kernak died on the floor of her cell following SOA, DOC's failure to monitor and failure to provide medical care to Ms. Kernak in her cell.

COMPLAINT                                                                                    Page 10 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 10 of 63

41.     On May 14, 2014, inmate Mark Bolus died from a suicide attempt in his segregation cell as a result of SOA, DOC's failure to monitor and failure to provide mental health treatment to Mr. Bolus in his segregation housing.

42.     On June 6, 2014, inmate Kirsten Simon died in her cell due to SOA DOC's failure to monitor and failure to provide medical care to Ms. Simon in her jail cell.

43.     On August 14, 2015, inmate Joseph Murphy died in his cell as a result of SOA, DOC's failure to monitor and failure to provide medical care for Mr. Murphy in his cell.

44.     In January 2016, inmate Kellsie Green died in her segregation cell following SOA, DOC's failure to monitor and failure to provide mental health and medical care to Ms. Green in her cell.

45.     On November 16, 2016, inmate Kristoffer Reuer died after an apparent suicide attempt in segregated housing following SOA, DOC's failure to monitor and to provide mental health and medical treatment for Mr. Reuer in his segregation cell.

46.     In June 2017, inmate Arlo Olson died from a suicide attempt subsequent to SOA, DOC's failure to monitor and failure to provide mental health care to Mr. Olson in his cell.

47.     On August 21, 2017, inmate Antonio Roberson died from a suicide attempt in his segregation cell due to SOA DOC's failure to monitor and failure to provide mental health treatment for Mr. Roberson in his segregation housing.

48.     In August, 2018, inmate Kendall Barrett died from a suicide attempt after SOA, DOC's failure to monitor and provide mental health treatment for Mr. Barrett.

COMPLAINT                                                                                      Page 11 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 11 of 63

49.     On October 26, 2018, inmate Doran Jennings died of an apparent suicide in segregated housing subsequent to SOA, DOC's failure to monitor and failure to provide mental health treatment for Mr. Jennings in his segregation cell.

**F. SOA, DOC Documented that this Was Gabby Chipps' First Time in Jail and Documented Gabby to Be Under the Influence of Drugs at the Time of Her Arrest.**

50.     On January 19, 2020, Gabby was arrested and taken to Homer Jail.

51.     For Gabby's initial booking screen, in answer to the question: "Does the detainee appear to be under the influence of any drug?" Homer Jail staff circled "YES" and wrote in "herion."

52.     For Gabby's initial health screen, in answer to the question: "Does the prisoner appear to be under the influence of barbiturates, heroin, or any other drugs?" Homer Jail staff again circled "YES."

53.     For Gabby's initial health screen, in answer to the question: "Does the prisoner's behavior suggest the risk of assault to staff or to other prisoners?" Homer Jail staff circled "NO."

54.     For Gabby's booking record, in answer to the inquiry for "NAME AND ADDRESS OF EMERGENCY CONTACT" Homer Jail staff documented "Timothy Chipps . . . Father" and included Timothy Chipps' phone number.

55.     Gabby was transferred from Homer Jail to Wildwood Pretrial Facility ("WPT") on January 22, 2020.

COMPLAINT                                                                 Page 12 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 12 of 63

56.     At Gabby's initial booking screen at WPT, SOA, DOC medical staff had knowledge of the information from Gabby's initial booking and medical screen from Homer jail, and documented "Homer med screen attached to this file too."

57.     SOA, DOC security staff had knowledge of and possession of Gabby's booking records from the Homer Jail.

58.     At Gabby's initial booking screen at WPT, it was observed and documented by SOA, DOC medical staff that this was Gabby's first time to ever be in jail and that she admitted to using heroin a few weeks prior.

59.     At the time of her booking, SOA, DOC medical staff checked "No" for "Venereal Disease" and "3 weeks ago" for "last menstrual period."  Medical staff also referred Gabby to behavioral health for evaluation by a mental health counselor and assigned her to "Detox Cell/Booking" for housing.

**G. SOA, DOC Placed Gabby on Suicide Precautions Immediately Upon Her Arrival at Wildwood Pretrial Facility and Failed to Follow Its Own Policies and Procedures on Suicide Assessment, Prevention, and Ongoing Suicide Evaluation.**

60.     Immediately upon her arrival at WPT on January 22, 2020, SOA, DOC personnel placed Gabrielle on suicide precautions and restricted her from being in possession of any sharps or razors that she could use to harm herself with.

61.     SOA, DOC Policy 807.20, Section IIB, dated September 6, 2019, states in pertinent part: "Any employee who identifies a prisoner as being at risk for suicide shall follow the procedures outlined in section III below, to ensure the safety of the prisoner."

COMPLAINT                                                                                          Page 13 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 13 of 63

62.     Section III of the September 6, 2020 Suicide Precautions policy 807.20, states in relevant part:

III.  Initiation of Suicide Prevention Status:
      When a prisoner is identified as being at risk for suicide, the prisoner shall be placed on suicide prevention status and staff shall:

   A.  Not leave the prisoner unattended;

   B.  Secure the environment and remove any items that may be used to inflict harm;

      1.  Immediate removal of items may be delayed in circumstances where the prisoner is non-compliant, but is not actively engaged in suicidal or self-harming behaviors and is in constant observation of staff;

   C.  Notify the Superintendent or designee of the prisoner's suicidal behaviors or ideations;

   D.  Notify the mental health staff or if they are unavailable, the health care department;

   E.  Ensure the prisoner is housed in a suicide prevention cell on the appropriate suicide prevention status. If a suicide prevention cell is not available, the prisoner shall be housed in a safe location designated by the Superintendent;

   F.  Ensure that a Suicide Prevention Status Orders-Placement (Attachment A) is completed and routed to designated staff; and

   G.  Observe the prisoner based on the order documented on the Suicide Prevention Status Orders – Placement (Attachment A).

63.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC left Gabby unattended on a regular basis.

64.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to keep Gabby under constant observation and failed to remove items Gabby could use to inflict self-harm.

65.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to house Gabby in a safe and appropriate suicide prevention cell.

COMPLAINT                                                                                    Page 14 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 14 of 63

66.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete a Suicide Prevention Status Orders-Placement and distribute to all SOA, DOC employees responsible for Gabby's safety.

67.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to properly assess and evaluate Gabby.

68.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to properly observe and monitor Gabby.

69.     Section IV of the September 6, 2020 Suicide Precautions policy 807.20, states in pertinent part:

VI. Evaluation:

All prisoners identified as at risk of self-injury, suicide or injury to others shall be evaluated by the mental health staff or designee within 24 hours to determine the degree of risk, level of supervision needed, treatment, and to determine if the prisoner's suicide risk is associated with symptoms of mental illness, substance use or situational. The SAFE-T assessment protocol shall be used in the evaluation:

A. While on suicide prevention status, mental health staff shall meet with the prisoner every work day to reassess the prisoner's suicide risk using the SAFE-T assessment protocol on the SAFE-T form (Attachment C).

B. If mental health staff are unavailable, a member of the nursing staff shall use the SAFE-T form (Attachment C) and call the on-call provider for consultation.

C. If a prisoner is actively engaging in self-harm, mental health staff may authorize the use of therapeutic restraints as outlined in DOC P&P 1207.02 (Therapeutic Restraint and Seclusion). Staff shall notify the Superintendent or designee of any use of restraints.

D. It is the mental health staff or designee responsibility to communicate the prisoner's suicide prevention plan to all employees responsible for the safety of the prisoner.

E. Any suicidal prisoner who cannot be safely managed at the institution shall be considered for transfer to another institution which can provide the additional mental health services needed by the prisoner. This determination shall be made by the Superintendent in conjunction with mental health staff. If a transfer cannot occur, the reasons shall be documented by the Superintendent or mental health staff.

COMPLAINT                                                                                          Page 15 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 15 of 63

70.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete its own SAFE-T suicide risk assessment protocol, as required by its policies and procedures, to determine Gabby's "degree of risk, level of supervision needed, treatment," and whether Gabby's "suicide risk is associated with symptoms of mental illness, substance use, or situational."

71.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to meet with Gabby every work day to reassess Gabby's risk using the SAFE-T assessment protocol and form.

72.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to communicate Gabby's suicide prevention plan, determined by SOA, DOC's SAFE-T assessment protocol, to all SOA, DOC employees responsible for Gabby's safety.

73.     Despite SOA, DOC placing Gabby on Suicide precautions on January 22, 2020, SOA, DOC failed to determine the need to transfer Gabby to another institution to provide mental health services, or document the reasons why a transfer cannot occur.

**H. Immediately Upon Arriving at Wildwood Pretrial Facility, SOA, DOC Observed Gabby Experiencing a Serious Mental Health Breakdown.**

74.     On January 19, 2020, for Gabby's initial health screen, in answer to the question: "Does the prisoner's behavior suggest the risk of assault to staff or to other prisoners?" Homer Jail staff circled "NO."

75.     On January 24, 2020, two days after Gabby's arrival at Wildwood Pretrial Facility, SOA, DOC Mental Health Clinician Beth Selby evaluated Gabby and noted that

COMPLAINT                                                                                          Page 16 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 16 of 63

she was "marginally cooperative" and would only give "yes" or "no" answers to questions, but documented that "Security reports she has been cooperative." Mental Health Clinician Selby cleared Gabby for housing.

76.     The very next morning, on January 25, 2020 at 0900 hours, SOA, DOC observed a very serious deterioration of Gabby's mental health.

77.     On January 25, 2020, Gabby was observed by SOA, DOC security and medical staff experiencing a serious mental breakdown, and harming herself.

78.     At 0900 on January 25, 2020, Gabby was observed verbally threatening SOA, DOC security staff, punching the door, window, and wall of her cell, and attempting to break the toilet in her cell.

79.     SOA, DOC security officer Lawrence asked Gabby if she wanted to kill or harm herself to which Gabby reportedly replied "I'd like to kill you Lawrence."

80.      Gabby was observed harming herself by SOA, DOC security and medical staff, blood was observed on her right hand, and blood stains were observed on her clothing from her punching the door, window, and wall of her cell.

81.     SOA, DOC security Staff Sargent Gerad Siamani was called to the scene by security officer Hardesty.

82.     Siamani directed Gabby to lay face down flat on the floor, but Gabby refused and stated she would attack anyone that tried to enter her cell.

83.     Siamani asked Gabby if she was physically ok, but Gabby would not reply.

COMPLAINT                                                                 Page 17 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 17 of 63

84. On Siamini's orders, security staff then deployed OC spray into Gabby's cell to gain her compliance to security staff orders and to prevent her from further harming herself.

85. Gabby became aggressive again on her way to booking and had to be carried by security staff officers to her holding cell.

86. Gabby received medical treatment for the wounds to her hand caused by her self-harming behavior.

87. A copy of the video recording of the incident was placed into evidence by SOA, DOC security staff.

88. On January 25, 2020, Staff Sargent Gerad Siamani signed Gabby's Administrative Segregation Admission form.

89. On January 25, 2020, Superintendent Shannon McCloud signed Gabrielle's individual determination for segregation, and Gabrielle was placed in administrative segregation.

## I. Despite Gabby Being On Suicide Precautions and Experiencing a Serious Mental Breakdown, SOA, DOC Continually Failed to Follow Its Own Policies.

90. Section VII of the Suicide Prevention policy, 807.20, states as follows:

VII. Housing:
Any prisoner determined to be at increased risk of self-injury or suicide shall be housed in a suicide prevention cell. Employees shall respect and ensure the safety and well-being of prisoners when on suicide prevention status:

COMPLAINT                                                                 Page 18 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 18 of 63

A. Each institution shall designate a suicide resistant cell(s) or areas that ensure:

   1. A clear and unobstructed view of the prisoner at all times. Windows shall not be covered;

   2. Staff interaction with the prisoner; and

   3. Quick intervention should the prisoner engage in self-injurious behaviors.

B. Prior to the prisoner being placed in the suicide prevention cell or area, a thorough search of the prisoner and cell shall be conducted per DOC P&P 1208.08 (Searches of Prisoners and Institutional Areas). All items, devices, and materials the prisoner could use to engage in self-injurious behavior shall be removed.

C. Prisoners shall only be given items specified on the Suicide Prevention Status Orders – Placement (Attachment A). Property restrictions may only be used to ensure safety of the prisoner and may not be used as a punitive measure.

D. Under emergency conditions, a prisoner considered at risk of self-injury or suicide may be placed in an alternate cell / location until a designated suicide resistant cell is available. The prisoner must be moved to a designated suicide prevention cell as soon as possible.

E. Prisoners on suicide precautions may be housed with other prisoners on suicide precautions, based upon the recommendations of the mental health staff or designee.

91.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to house Gabby in a suicide prevention cell.

92.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to maintain a clear and unobstructed view of Gabby at all times.

93.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to maintain appropriate staff interaction with Gabby.

94.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to place Gabby in a cell that ensured quick intervention when Gabby engaged in self-injurious behaviors.

COMPLAINT                                                                 Page 19 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 19 of 63

95.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to conduct a search of Gabby's segregation cell and identify all items and areas that could be used for self-harm.

96.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete any Suicide Prevention Status Orders for Gabby.

97.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC placed Gabby in an isolated and unmonitored cell as a disciplinary measure.

98.     Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC's placement of Gabby in an isolated and unmonitored cell was a punitive measure.

### J. SOA, DOC Aggravated Gabby's Mental Health Breakdown By Approving her for Administrative Segregation, and by Requesting STD Screen Despite Gabby Reporting No STDs at Booking.

99.     On January 26, 2020, despite Gabby reporting no venereal disease at initial booking, nor requesting a sexually transmitted disease screen, SOA, DOC medical staff requested a urine sample from Gabby for a sexually transmitted disease testing.

100.    SOA, DOC staff documented that Gabby became agitated and stated she was not doing sexually transmitted disease testing and she didn't ask for sexually transmitted disease testing.

101.    On January 27, 2020, Superintendent McCloud approved Gabby's Administrative Segregation Admission form, based on the January 25 incident.

COMPLAINT                                                                          Page 20 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 20 of 63

102.    Superintendent McCloud's approval was in violation of national standards and protocols as well as SOA, DOC Suicide Prevention Policy 807.20.

### K. Gabby Suffered Another Serious Mental Breakdown, and Officer Siamani and Superintendent Milburn Continued to Violate SOA, DOC Policy.

103.    On January 28, 2020, SOA, DOC observed Gabby suffering another serious mental breakdown.

104.    At approximately 0900 on January 28, 2020, SOA, DOC male correctional officer Hardesty observed Gabby banging on her cell door and speaking inaudibly.

105.    Control released Gabby's cell door, and she came out of her cell and grabbed male officer Hardesty around his shoulder and chest area and attempted to push him.

106.    Officer Hardesty attempted to bring Gabby to the ground, and she grabbed the handrail in resistance.

107.    Officer Hardesty radioed for back-up assistance and managed to successfully take Gabby to the ground.

108.    Assisted by three other SOA, DOC security officers, including Staff Sargent Gerard Siamani, Gabby was placed in restraints and escorted to booking.

109.    Gabrielle was then placed in two-man full restraints and placed in administrative segregation housing.

110.    A copy of the video surveillance recording the incident was placed into evidence by SOA, DOC.

111.    On January 28, 2020, Gabby refused to sign the Initial Classification/Designation Form.

COMPLAINT
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Page 21 of 63

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 21 of 63

112. On January 28, 2020, Staff Sargent Gerad Siamani signed Gabby's Administrative Segregation Admission form in violation of national standards and protocols as well as SOA, DOC Suicide Prevention Policy 807.20.

113. On January 28, 2020, Assistant Superintendent Milburn approved Gabby's Administrative Segregation Admission form in violation of national protocols and SOA, DOC policies and procedures.

114. On January 28, 2020, SOA, DOC Assistant Superintendent James Milburn approved Gabrielle's Individual Determination for segregation in violation of SOA, DOC policies and procedures.

115. On January 29, 2020, SOA, DOC security personnel observed Gabby as "Mentally Unsound" as documented in the notice of classification hearing paperwork being reviewed with Gabby.

## L. SOA, DOC Knew Gabby Received a "Time Served" Offer from the Kenai District Attorney's Office.

116. On January 30, 2020, Gabby's attorney, Hannah Etengoff, went to WPT to talk with Gabby about a "time served" offer from the Kenia District Attorney's office.

117. The offer also required, among other things, that Gabby complete mental health and substance abuse evaluations, and follow all recommendations, with quarterly compliance reports to go to the district attorney's office as to Gabby following these recommendations.

118. There are mental health treatment programs and substance abuse treatment programs located in Kenai, Soldotna, Ninilchik, and Homer that would be able to provide

COMPLAINT                                                                                      Page 22 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 22 of 63

Gabby with treatment based on any mental health and substance abuse evaluations and recommendations.

119.  In Attorney Etengoff's experience, people generally do well in treatment and recovery for their mental health and substance abuse issues when their treatment is monitored through the district attorney's office.  There is significantly less recidivism for people as well when their treatment is monitored through the district attorney's office.

**M. SOA, DOC Knew Gabby Was Having a Mental Health Breakdown**

120.   When Attorney Etengoff arrived at WPT to see Gabrielle, the SOA, DOC corrections officer on duty said to Attorney Etengoff "Do you *know* Ms. Chipps?  Well Ms. Chipps doesn't follow the rules" (emphasis in original).

121.   The way the corrections officer spoke to Attorney Etengoff about Gabby, it was implied that personnel at the jail knew Gabby was having some kind of mental breakdown.

122.   Attorney Etengoff told the officer on duty that she had a "time served" offer for Gabby, and wanted to talk with Gabby about the "time served" offer.

123.   The officer told Attorney Etengoff that Gabby refused to see her.

124.   Attorney Etengoff asked the officer to escort her back to see Gabby so Attorney Etengoff could show Gabby her face and talk to her about the time served offer.

125.   In the past when Attorney Etengoff has made this request, if she is told a client is refusing to see her and she strongly suspects the client is having a mental health problem, correctional officers have escorted her back so she could talk with her client face to face.

COMPLAINT                                                                                          Page 23 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 23 of 63

**N. SOA, DOC Refused to Allow Gabby's Attorney to Speak with Gabby About the "Time Served" Offer.**

126.    This time, despite Attorney Etengoff telling the officer she had a "time served" offer to discuss with Gabby, when Attorney Etengoff requested to see Gabby, the officer refused and said "No we can't do that."

127.    When it was clear the officer would not take Attorney Etengoff to see Gabby, Attorney Etengoff told him she had a time served offer for Gabby and handed him the offer and her business card and asked him to give them to Gabby.

128.    The offer was only one page, and the words "Time to serve: 31 days" were plainly visible in the middle of the page and could easily be seen by anyone holding the one page offer.

129.    The officer took the offer and business card from Attorney Etengoff and told her he would give both to Gabby.

130.    The Public Defender Agency had mailed Gabby paperwork to be signed.

131.    Attorney Etengoff was informed by the officer that Gabby signed the paperwork, then ripped it up and threw it back at him.

132.    The WPT officers would usually mention to Attorney Etengoff if her client was in segregation, but the officer didn't mention that Gabby was in segregation.

133.    WPT did not allow Attorney Etengoff to see or speak to Gabby at WPT on January 30, 2020.

134.    When Attorney Etengoff arrived at court on January 30, 2020 for Gabby's court hearing, she was informed that Gabby refused to be transported from WPT to court.

COMPLAINT                                                                                          Page 24 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 24 of 63

**O. SOA, DOC Failed to Follow Its Own Policies and National Standards; Gabby Continued to Show Serious Mental Health Breakdown and Mental Health Clinician Selby Violated SOA, DOC Policies in Evaluating Gabby.**

135.    On January 30, 2020, SOA, DOC Mental Health Clinician Beth Selby conducted Gabby's initial mental health assessment for segregated housing in violation of SOA, DOC policies and procedures.

136.    Despite Gabby's being on Suicide Precautions since January 22, 2020, and despite Gabby's very recent and serious mental health breakdowns and Gabby demonstrating serious mental health decline, Counselor Selby failed to complete a SAFE-T assessment pursuant to SOA, DOC protocol and failed to follow relevant SOA, DOC Suicide Prevention 807.20 Policies and Procedures.

137.    During the January 30, 2020 assessment, Counselor Selby documented "Yes" for "Conflict with staff and/or offenders" and further documented that Gabby was "placed in seg on 2 man full restraint for assaulting on an officer. She [Gabby] also told another officer she wanted to kill her."

138.    Selby documented Gabby's "Attitude" as "Withdrawn" and "Guarded."

139.    Selby documented "No" for "Speech appropriate to situation" and further documented speech was "slow" and "monotone."

140.    Selby documented "No" for "Affect appropriate to situation" and further documented affect as "flat."

141.    For "Thought process logical and goal directed" Selby documented "Would only answer questions with "yes" or "no.""

COMPLAINT                                                                                           Page 25 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 25 of 63

142.   Selby documented "No" for "Insight and judgment appropriate to situation" and further documented "impulsive."

143.   Selby documented that Gabby "denies any MH problems.   Current presentation could be related to drugs but she won't answer enough questions to determine this or if she has MH problems."

144.   Selby documented "Yes" for "Any observed mental health symptoms?" and further documented that Gabby "Needs further eval. Guarded, flat affect, bx problems."

145.   Selby's "Plan" was to "Continue [segregated] housing per security" while Gabby is on Suicide Precautions, contrary to being on notice more than 10 years ago that this violates SOA, DOC policy and national standards unless SOA, DOC provides continual monitoring and appropriate evaluation and treatment for Gabby pursuant to policy 807.20.

146.   Section VIII of the Suicide Precaution policy 807.20 states in relevant

VIII.   Treatment:
   A safety plan shall be developed by mental health staff or designee for all prisoners at risk of self-injury and suicide. The treatment plan shall be based on the SAFE-T assessment protocol:

   A.   The mental health staff shall address the underlying reason for the suicidal behaviors or ideations. The mental health staff shall develop an initial safety plan using the Suicide Prevention Safety Plan (Attachment D) to address the suicide risk which shall incorporate identifying protective factors, future goals, and support system.

   B.   The mental health staff shall develop a treatment plan to include monitoring strategies to prevent future relapse. This treatment plan shall be documented in the prisoner's medical record.

   C.   The mental health staff or designee shall document any condition which indicates a need to change the suicide prevention status. Changing the suicide prevention status includes:

      1. Moving to a higher suicide prevention status;

COMPLAINT                                                                                                          Page 26 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 26 of 63

2. Gradual removal of suicide prevention status; or

3. Discharge / release from suicide prevention status.

D. Discontinuation of suicide prevention status shall be determined only by mental health staff or their designee in consultation with mental health staff and documented using the Suicide Prevention Status Orders-Removal (Attachment B).

147.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and SOA, DOC failed to develop a safety plan for Gabby based on the SAFE-T assessment protocol.

148.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and SOA, DOC failed to address the underlying reasons for Gabby's suicidal risk.

149.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and SOA, DOC failed to develop an initial safety plan for Gabby using the Suicide Prevention Safety Plan to address Gabby's suicide risk by incorporating "identifying protective factors, future goals, and support system."

150.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and SOA, DOC failed to develop a treatment plan that includes monitoring strategies to prevent future relapse.

COMPLAINT                                                                                     Page 27 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 27 of 63

151.    Despite SOA, DOC observing Gabby's continual mental health decline, Selby and SOA, DOC failed to document any conditions indicating a need to change Gabby's suicide prevention status.

## P. Superintendents McCloud and Milburn Continued to Violate SOA, DOC Policies.

152.    On January 31, 2020, Assistant Superintendent James Milburn approved Gabby's Administrative Segregation Hearing Form based on the January 28 incident, in violation of SOA, DOC policies and procedures.

153.    On February 2, 2020, Gabby submitted a Request for Interview Form to Superintendent James Milburn asking when she will get out of segregated housing.

154.    Superintendent Shannon McCloud responded to Gabby's February 2 request, stating "When you stop attacking staff" in violation of SOA, DOC policies and procedures.

155.    On February 3, 2020, SOA, DOC personnel documented that Gabby "refused" to receive a copy of her Administrative Segregation Hearing Form.

## Q. Gabby's Mental Health Continued to Seriously Deteriorate; SOA, DOC Diagnoses Gabby with Depression While in Segregation Housing.

156.    On February 5, 2020, SOA, DOC psychiatry staff documented that Gabby "complains of depression for days to weeks" diagnosed "Depressive Disorder NOS" and prescribed Celexa, 20 milligrams daily.

157.    SOA, DOC Mental Health Counselor Selby conducted a segregated housing assessment on February 5, 2020.  For "Conflict with staff and/or offenders?" Selby documented "Yes" and further documented "In seg for assault on an officer.  Also told another officer she wanted to kill her.  2 man status."

COMPLAINT                                                                                          Page 28 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 28 of 63

158. For "Problems reported by patient" Selby documented "Yes" and further documented "Depression reported. Wants out of seg."

159. For "Speech appropriate to situation" Selby documented "Slow/monotone. Short/vague answers to questions."

160. For "Mood appropriate to situation" Selby documented "No" and further documented "irritable."

161. For "Affect appropriate to situation" Selby documented "No" and further documented "smirk on her face during assessment."

162. For "Insight and judgment appropriate to situation" Selby documented "No" and further documented "Bx problems, anger, doesn't take responsibility for why she's in seg. Claims to not remember what she did to get in seg."

163. For "Does the patient report current homicidal ideation (If yes, follow Policy and Procedure)" Selby documented "Yes" and further documented "When asked if she was having thoughts of harm to others, she smirked and replied sarcastically 'Of course not.'"

164. For "Is the Patient currently on the Behavioral Health Caseload" Selby documented "Yes" and further documented "Seen at clinic today. Meds ordered."

165. For "Any observed mental health symptoms" Selby documented "Yes" and further documented "IM appears to be mostly antisocial. Likely attention seeking bxs."

166. Regardless of SOA, DOC's perception of Gabby's underlying reasons for suicide risk, for example, genuine distress versus manipulation, SOA, DOC is required to follow national standards and protocols, and DOC, SOA Suicide Prevention policies and procedures regarding Gabby's safety.

COMPLAINT                                                                 Page 29 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 29 of 63

167. For "Plan" Selby documented "Continue [segregated] housing per security" while Gabby is on Suicide Precautions, contrary to SOA, DOC policy, and contrary to being on notice more than 10 years ago that this violates national standards unless SOA, DOC provides constant monitoring, appropriate assessment, evaluation, and treatment for of Gabby pursuant to policy 807.20.

**R. SOA, DOC Aggravated Gabby's Mental Health Condition By Sentencing Her to 54 Days Punitive Segregation Knowing She Had Received a "Time Served" Offer, Then Failed to Continually Monitor Gabby in her Segregation Housing Contrary to SOA, DOC Policies and National Standards..**

168. On February 5, 2020, Gabby said she did not remember punching the wall of her cell, trying to break the toilet, or saying she wanted to kill Officer Lawrence, but was found guilty of these charges and sentenced to 14 days punitive segregation despite SOA, DOC having actual knowledge that Gabby had received a "time served" offer through Attorney Etengoff.

169. On February 5, 2020, Gabby admitted to the infraction of assaulting a staff member, found guilty, and sentenced to 40 days punitive segregation despite SOA, DOC having actual knowledge that Gabby had received a "time served" offer through Attorney Etengoff.

170. On February 6, 2020, SOA, DOC medical staff attempted to obtain a urine sample from Gabby. Medical staff did not explain to Gabby why a urine sample was being requested. Gabby provided a urine cup filled with what medical staff reported "looks like tap water."

COMPLAINT                                                                                                    Page 30 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 30 of 63

171.    On February 7, 2020, Gabby was advised that a pregnancy test was needed before she could receive the Celexa medication prescribed for her depression on February 5. Gabby refused a urine pregnancy screen and SOA, DOC behavioral health was notified through tagging the note.

172.    There was no response to Gabby by SOA, DOC behavioral health based on the February 7, 2020 tagged note.

173.    Gabby was not receiving her Celexa medication prescribed by SOA, DOC to her for depression, and SOA, DOC failed to monitor her in her segregation cell in violation of national standards and SOA, DOC policies and procedures.

## S. In Addition to being placed on Suicide Precautions, and having a Serious Mental Breakdown, National Standards Recognized Gabby to be at High Risk of Suicide.

174.    In addition to other individual high-risk factors for suicide, national standards and protocols recognize the time period upon admission to jail to be a high risk period for suicide.

175.    On February 8, 2020, Gabby had been in jail, for the first time, for less than three weeks.

176.    In addition to other individual high-risk factors for suicide, national standards and protocols recognize the time period following institutional proceedings for punitive segregation to be a high risk period for suicide.

177.    On February 5, 2020, Gabby was sentenced to 54 days punitive segregation.

COMPLAINT                                                                                                  Page 31 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 31 of 63

178.     In addition to other individual high-risk factors for suicide, national standards and protocols recognize the time period after an inmate is placed in segregated housing to be a high risk period for suicide.

179.     SOA, DOC placed Gabby in segregation housing on January 25, 2020, and on January 28, 2020 through February 8, 2020.

### T.  Gabby Attempted Suicide, Diagnosed with Anoxic Brain Injury.

180.     On February 8, 2020 at approximately 6 p.m., SOA, DOC medical staff were called to Gabby's segregation cell due to Gabby needing to be cut down.

181.     Upon arrival, medical and security staff found Gabby hanging by a sheet, wrapped around her neck and attached to the window.

182.     Emergency 911 was called and cardiopulmonary resuscitation was initiated without return of spontaneous circulation.

183.     Upon arrival of emergency medical service, Gabby's care was turned over to Nikiski Fire Department personnel, who achieved return of spontaneous circulation.

184.     Nikiski Fire Department transported Gabby to the Emergency Department at Central Peninsula Hospital.

185.     Upon Gabby's arrival at Central Peninsula Hospital, tests confirmed Gabby was not under the influence of any drug, and Gabby was not pregnant.

186.     Upon arrival at Central Peninsula, it was also confirmed that Gabby did not have a sexually transmitted disease.

187.     Upon Gabby's admission to Central Peninsula Hospital, she was diagnosed with, among other injuries, anoxic brain injury.

COMPLAINT                                                                                          Page 32 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 32 of 63

188.    Based on the February 8, 2020 incident, and her diagnosis of anoxic brain injury, Gabby was unable to make any decisions regarding her medical care.

**U.  As a Disciplinary Measure, Gabby Was Left Unmonitored in an Isolated Cell in Violation of SOA, DOC Policy and Federal Standards; SOA, DOC Failed to Notify Gabby's Family in Violation of SOA, DOC Policies.**

189.    Upon Gabby's admission to Central Peninsula Hospital, hospital doctors had no medical records for Gabby to know the names of family and next of kin.

190.    Central Peninsula Hospital doctors had a number of discussions with SOA, DOC personnel regarding this lack of information and the need to notify Gabby's family members and next of kin.

191.    SOA, DOC personnel had discussions about this, and reported to Central Peninsula Hospital doctors that SOA, DOC will release information to Gabby's family members and next of kin, when required by SOA, DOC policies.

192.    SOA, DOC did not notify Gabby's family members, Timothy and Holly Chipps about the incident.

193.    The Alaska State Trooper, at approximately 11p.m. on February 8, 2020, left a voice message for the Chipps more than five hours after the incident happened.

194.    Timothy and Holly Chipps did not hear the message regarding Gabby's incident until the morning of February 9, 2020, and immediately returned the call just after 7 a.m. on February 9.

195.    After many attempts to speak with a person at WPT, Timothy and Holly finally reached an on duty officer who told them he could share no information and would have his supervisor call them back.

COMPLAINT                                                                                  Page 33 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 33 of 63

196.    Timothy and Holly received a call from Sergeant Weeks at approximately 8:16 a.m., more than 14 hours after Gabby's incident.

197.    Sergeant Weeks informed Timothy and Holly that Gabby was found hanging in her isolated and unmonitored jail cell during a shift change at approximately 6 p.m. on February 8, while the guards were doing a final count.

198.    Sergeant Weeks stated the guards discovered Gabby hanging and cut her down.

199.    Timothy and Holly Chipps asked Sergeant Weeks why Gabby was left in an isolated and unmonitored cell.

200.    Sergeant Weeks informed Timothy and Holly Chipps that although WPT has monitored cells, Gabby was placed in an isolated and unmonitored cell as a disciplinary measure.

201.    Sergeant Weeks then became defensive, and stated Timothy and Holly could speak with Superintendent Shannon McCloud.

202.    Timothy and Holly requested that Sergeant Weeks have Shannon McCloud call them.

203.    Timothy and Holly Chipps immediately began the hour plus drive to Southcentral Peninsula Hospital, given winter road conditions, and arrived in time to see Gabby just before she was medevaced to Anchorage.

204.    Timothy and Holly then drove back to their home to make arrangements to drive to Anchorage to see Gabby the next day.

COMPLAINT                                                                                     Page 34 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 34 of 63

205.	On or about February 10, 2020, Timothy and Holly Chipps drove to Anchorage to see Gabby and talk with her doctors.

206.	In August, 1995, SOA, DOC approved policy number 807.20, Suicide Prevention and Awareness, which states in pertinent part: "The Superintendent shall notify family members or others designated by the prisoner in case of serious illness, injury, or death of a prisoner per policy #807.04."

207.	In June, 2008, SOA, DOC approved policy number 808.17, Notification of Serious Illness, Injury, or Death of a Prisoner, which states in relevant part:  "In the event of serious illness or injury, the Superintendent shall ensure that the individual designated by the prisoner to be contacted in the event of an emergency is notified."

208.	SOA, DOC failed to notify Timothy Chipps, Gabby's designated emergency contact, nor Holly Chipps, Gabby's family member, until more than five hours after the February 8 incident, in violation of SOA, DOC policies 807.20 and 808.17.

209.	During this five hour period, Gabby was unable to make any decisions about her medical care, and Timothy and Holly Chipps were unable to assist Gabby's medical providers in making decisions about her medical care.

## V. SOA, DOC Demanded to Know Why Holly Chipps Requested a Rape Kit for Gabby.

210.	Because of this incident, Holly Chipps, Timothy Chipps, and family and loved ones were seeking answers as to why this had happened while Gabby was in the care of SOA, DOC.

COMPLAINT	Page 35 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 35 of 63

211.    Due to this, on or about February 12, 2020, Holly Chipps requested that SOA, DOC conduct a rape kit for Gabby.

212.    On or about February 14, 2020, SOA, DOC investigator Johnny Walls called Holly Chipps and demanded to know why Holly Chipps had requested SOA, DOC conduct a rape kit for Gabby.  Holly Chipps explained that Gabby's family and loved ones were trying to seek answers as to why this happened while Gabby was in the care of SOA, DOC.

**W. Superintendent McCloud Did Not Call Timothy and Holly Chipps Back Until More Than a Week Later.**

213.    On February 9, 2020, after many phone call attempts to speak with a WPT officer, Timothy and Holly Chipps spoke with Sergeant Weeks, more than 14 hours after Gabby's incident occurred.

214.    Sergeant Weeks told Timothy and Holly that WPT guards found Gabby hanging in her cell.

215.    When Timothy and Holly asked Sergeant Weeks specific questions about the incident, Sergeant Weeks became defensive, and told the Chipps they could speak with Superintendent Shannon McCloud.

216.    Timothy and Holly requested that Sergeant Weeks have Shannon McCloud call them back  to discuss Gabby's incident.

217.    Superintendent McCloud did not call Holly and Timothy back, so Timothy called and left a message for Superintendent McCloud to call the Chipps.

218.     Superintendent McCloud still did not call the Chipps back until more than a week later.

COMPLAINT                                                                    Page 36 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 36 of 63

219. Gabby remained hospitalized for an extended period of time into March 2020.

220. Upon her hospital discharge, Gabby returned to her parents' home.

221. Gabby currently resides at her parents' home.

222. Gabby requires extensive care to function and stay alive.

223. Gabby did not have permanent physical impairment or disfigurement prior to this incident.   Exhibit 1.

224. Gabby has severe permanent physical impairment.

225. Gabby's physical condition substantially and permanently limits one or more of her major life activities.

226. Gabby is severely disfigured.

227. Gabby's injuries have marred her physical appearance and caused a degree of unattractiveness sufficient to bring negative attention or embarrassment.  Exhibit 2.

228. Since Gabby's hospital discharge, Gabby's mother has acted as primary caregiver for in home care.

229. Gabby also receives medical care from outside providers who come to her home on a routine basis. Gabby also has to return to medical facilities for care.

## X. SOA, DOC Failed to Provide Records and Video of Gabby's Incident to Gabby's Family.

230. In May, 2020, Gabby's parents and guardians, Timothy and Holly Chipps, requested from SOA, DOC all records and videos in its possession concerning their daughter, Gabby, and the February 8, 2020 incident.   At that time, Timothy and Holly

COMPLAINT                                                                                                      Page 37 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 37 of 63

Chipps informed SOA, DOC of their willingness to enter into an agreement to prevent the disclosure of records and videos concerning Gabby to any other parties or persons so as to address any SOA, DOC's concerns that disclosing these materials to the Chipps would compromise security.

231.    In response to the May 2020 request, SOA, DOC refused to disclose records and videos concerning Gabby to Timothy and Holly Chipps.

232.    SOA, DOC possesses numerous records and videos concerning Gabby, and the February 8, 2020 incident, that have not been disclosed to her parents and guardians, Timothy and Holly Chipps.

## Y. SOA, DOC's Policies and Practices Are In Violation of 1) National Standards, 2) Its Own Policies and Procedures, and 3) In Reckless Disregard for the Constitutional Rights of Gabrielle Chipps.

233.    The 2010 ACLU report, the 2015 SOA, DOC Review and inmate deaths, and SOA, DOC's treatment of Gabby, demonstrate that SOA, DOC policies and practices are in violation of national standards, SOA, DOC's own policies, and in reckless disregard of the constitutional rights of Gabby Chipps.

234.    Based on SOA, DOC policies and practices, a substantial number of inmates with suicide risk and mental illness are not appropriately assessed, evaluated, and treated pursuant to policy 807.20 to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

235.    SOA, DOC policies and practices are to house inmates with suicide risk and mental illness in isolation and unmonitored, through segregated housing, as a disciplinary

COMPLAINT                                                                                          Page 38 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 38 of 63

measure, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

236. Under SOA, DOC policies and practices, inmates with suicide risk and mental illness that are placed in segregated housing are deprived of necessary mental health and medical care pursuant to policy 807.20, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

237. SOA, DOC is in possession of Gabby's medical records relating to the facts discussed in this complaint.

238. SOA, DOC is in possession of Gabby's correctional institutional file relating to facts discussed in this complaint.

239. SOA, DOC is in possession of other medical records and correctional institutional records relating to Gabby.

240. Despite Timothy and Holly Chipp's requests, SOA, DOC has not provided complete medical records of Gabby.

241. Despite Timothy and Holly Chipp's requests, SOA, DOC has not provided complete institutional records of Gabby.

242. SOA, DOC is in possession of video footage documenting Gabby's hanging incident.

243. SOA, DOC, is in possession of additional video footage, in addition to the hanging incident, relating to Gabby while in custody.

COMPLAINT                                                                                         Page 39 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 39 of 63

244.    SOA, DOC is in possession of video footage relating to its own employees and agents while Gabby was in custody.

245.    SOA, DOC is in possession of ACLU reports documenting DOC failures. *See* Exhibit 3.

246.    SOA, DOC is in possession of its own policies and procedures.

247.    SOA, DOC is in possession of the SOA 2015 review documenting its failures. *See* Exhibit 4.

### FIRST CAUSE OF ACTION

**(42 U.S.C. Section 1983—Violation of Civil Rights Against Defendants Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, and Does 1-10)**

248.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

249.    Defendants Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, and Does 1-10, are, and were at all times relevant to this complaint, SOA, DOC correctional officers and/or mental health and medical staff.  As such, Defendants were responsible for providing mental health and medical treatment to Gabrielle Chipps pursuant to SOA, DOC policies and procedures, and national policies and protocols, while Gabrielle was in the care of SOA, DOC.

250.    Defendants Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, and Does 1-10 engaged in conduct and omissions, including but not limited to, the following:

COMPLAINT
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 40 of 63

251.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC left Gabby unattended on a regular basis.

252.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to keep Gabby under constant observation and failed to remove items Gabby could use to inflict self-harm.

253.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to house Gabby in a safe and appropriate suicide prevention cell.

254.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete a Suicide Prevention Status Orders-Placement and distribute to all SOA, DOC employees responsible for Gabby's safety.

255.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to properly observe and monitor Gabby.

256.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete its own SAFE-T suicide risk assessment protocol, as required by its policies and procedures, to determine Gabby's "degree of risk, level of supervision needed, treatment," and whether Gabby's "suicide risk is associated with symptoms of mental illness, substance use, or situational."

257.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to meet with Gabby every work day to reassess Gabby's risk using the SAFE-T assessment protocol and form.

258.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to communicate Gabby's suicide prevention plan, determined by

COMPLAINT                                                                                    Page 41 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 41 of 63

SOA, DOC's SAFE-T assessment protocol, to all SOA, DOC employees responsible for Gabby's safety.

259.   Despite SOA, DOC placing Gabby on Suicide precautions on January 22, 2020, SOA, DOC failed to determine the need to transfer Gabby to another institution to provide mental health services, or document the reasons why a transfer cannot occur.

260.   SOA, DOC failed to house Gabby in a suicide prevention cell.

261.   SOA, DOC failed to maintain and clear and unobstructed view of Gabby at all times.

262.   SOA, DOC failed to maintain appropriate staff interaction with Gabby.

263.   SOA, DOC failed to conduct a search of Gabby's segregation cell and identify all items and areas that could be used for self-harm.

264.   SOA, DOC failed to complete any Suicide Prevention Status Orders for Gabby.

265.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, SOA, DOC failed to develop a safety plan for Gabby based on the SAFE-T assessment protocol.

266.   Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC placed Gabby in an isolated and unmonitored cell as a disciplinary measure.

COMPLAINT                                                                                    Page 42 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 42 of 63

267. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC's placement of Gabby in an isolated and unmonitored cell was a punitive measure.

268. SOA, DOC failed to address the underlying reasons for Gabby's suicidal risk.

269. SOA, DOC failed to develop an initial safety plan for Gabby using the Suicide Prevention Safety Plan to address Gabby's suicide risk by incorporating "identifying protective factors, future goals, and support system."

270. SOA, DOC failed to develop a treatment plan that includes monitoring strategies to prevent future relapse.

271. Despite SOA, DOC observing Gabby's continual mental health decline, SOA, DOC failed to document any conditions indicating a need to change Gabby's suicide prevention status.

272. Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown. Defendants also knew, or should have known, that Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer.

273. Instead of providing mental health treatment for Gabby, Defendants ignored, neglected, and aggravated her mental health breakdown.

274. Defendants engaged in conduct and omissions described herein in violation of 42 U.S.C. Section 1983.

COMPLAINT                                                                                    Page 43 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 43 of 63

275.    Among other things, Defendants knew or should have known, more than 10 years ago, that SOA, DOC policies and practices violated national standards and protocols regarding the need for continual monitoring of inmates on suicide precautions while in segregated housing.  Defendants further knew, or should have known, that failing to continually monitor Gabby while on suicide precautions in segregated housing, and while her mental health was seriously deteriorating, violated national standards and violated SOA, DOC suicide prevention policies and procedures.

276.    Defendants had a special relationship with Gabrielle Chipps in that she was in SOA, DOC care, giving rise to a legal duty under the Eighth and Fourteenth Amendments of the United States Constitution to provide Gabby with appropriate mental health and medical care and monitoring/supervision, including, but not limited to, conditions of confinement that would have prevented injury to Gabby while she was in the care of SOA, DOC.

277.    Defendants, acting under color of law in their individual and personal capacities, were deliberately indifferent to Gabby Chipps' rights, privileges, and immunities protected under the Eighth and/or Fourteenth Amendments of the United States Constitution.  Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown.  Defendants also knew, or should have known, that Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer.  Defendants acted with deliberate indifference by, among other things, ignoring, neglecting, and aggravating Gabby's mental health breakdown and failing

COMPLAINT                                                                                                    Page 44 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 44 of 63

to monitor and failing to provide mental health and medical treatment while Gabby was on suicide precautions in segregation housing. Defendants had more than 10 years actual notice that such failures were in violation of national standards, and in violation of SOA, DOC suicide prevention policies while Gabby was in SOA, DOC care.

278. As a direct result of the conduct and omissions of Defendants, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

279. As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' constitutional rights. Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## SECOND CAUSE OF ACTION

**(42 U.S.C. Section 1983—Failure to Hire, Train, Retain, Supervise, Discipline Causing Violation of Civil Rights Against Defendant State of Alaska Department of Corrections)**

280. Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

281. Defendants were on notice, more than 10 years prior to this incident, that SOA, DOC's own policies and practices were in violation of national standards and protocols regarding the need for constant monitoring and providing mental health and

COMPLAINT
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Page 45 of 63

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 45 of 63

medical care for inmates on suicide precautions in segregation housing. Defendant was aware that continuing in these dangerous policies and practices in violation of its own suicide prevention policies deprives inmates, including Gabby Chipps, of their constitutional rights. In persisting in these policies and procedures in violation of federal standards and SOA, DOC Suicide Prevention policies, Defendants acted in reckless disregard to the constitutional rights of Gabby Chipps, and caused serious permanent injuries to Gabby.

282. Over the course of more than 10 years prior to this incident, Defendants policies and practices have put the health and safety of inmates, including Gabby Chipps, in serious jeopardy, which policies and practices include, but are not limited to, the following:

283. The 2010 ACLU report, the 2015 SOA, DOC Review and inmate deaths, and SOA, DOC's treatment of Gabby, demonstrate that SOA, DOC policies and practices are in violation of national standards, SOA, DOC's own policies, and in reckless disregard of the constitutional rights of Gabby Chipps.

284. Based on SOA, DOC policies and practices, a substantial number of inmates with suicide risk and mental illness are not appropriately assessed, evaluated, and treated pursuant to policy 807.20 to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

285. SOA, DOC policies and practices are to house inmates with suicide risk and mental illness in isolation and unmonitored, through segregated housing, as a disciplinary

COMPLAINT                                                                                    Page 46 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 46 of 63

measure, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

286. Under SOA, DOC policies and practices, inmates with suicide risk and mental illness that are placed in segregated housing are deprived of necessary mental health and medical care pursuant to policy 807.20, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

287. Defendants violated numerous SOA, DOC policies and procedures, including but not limited to, the following SOA, DOC Suicide Prevention 807.20 policies and procedures:

288. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC left Gabby unattended on a regular basis.

289. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to keep Gabby under constant observation and failed to remove items Gabby could use to inflict self-harm.

290. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to house Gabby in a safe and appropriate suicide prevention cell.

291. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete a Suicide Prevention Status Orders-Placement and distribute to all SOA, DOC employees responsible for Gabby's safety.

292. Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to properly observe and monitor Gabby.

COMPLAINT                                                                                   Page 47 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 47 of 63

293.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to complete its own SAFE-T suicide risk assessment protocol, as required by its policies and procedures, to determine Gabby's "degree of risk, level of supervision needed, treatment," and whether Gabby's "suicide risk is associated with symptoms of mental illness, substance use, or situational."

294.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to meet with Gabby every work day to reassess Gabby's risk using the SAFE-T assessment protocol and form.

295.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC failed to communicate Gabby's suicide prevention plan, determined by SOA, DOC's SAFE-T assessment protocol, to all SOA, DOC employees responsible for Gabby's safety.

296.    Despite SOA, DOC placing Gabby on Suicide precautions on January 22, 2020, SOA, DOC failed to determine the need to transfer Gabby to another institution to provide mental health services, or document the reasons why a transfer cannot occur.

297.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC placed Gabby in an isolated and unmonitored cell as a disciplinary measure.

298.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, SOA, DOC's placement of Gabby in an isolated and unmonitored cell was a punitive measure.

299.    SOA, DOC failed to house Gabby in a suicide prevention cell.

COMPLAINT                                                                                    Page 48 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 48 of 63

300.    SOA, DOC failed to maintain and clear and unobstructed view of Gabby at all times.

301.    SOA, DOC failed to maintain appropriate staff interaction with Gabby.

302.    SOA, DOC failed to conduct a search of Gabby's segregation cell and identify all items and areas that could be used for self-harm.

303.    SOA, DOC failed to complete any Suicide Prevention Status Orders for Gabby.

304.    Despite SOA, DOC placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, SOA, DOC failed to develop a safety plan for Gabby based on the SAFE-T assessment protocol.

305.    SOA, DOC failed to address the underlying reasons for Gabby's suicidal risk.

306.    SOA, DOC failed to develop an initial safety plan for Gabby using the Suicide Prevention Safety Plan to address Gabby's suicide risk by incorporating "identifying protective factors, future goals, and support system."

307.    SOA, DOC failed to develop a treatment plan that includes monitoring strategies to prevent future relapse.

308.    Despite SOA, DOC observing Gabby's continual mental health decline, SOA, DOC failed to document any conditions indicating a need to change Gabby's suicide prevention status.

309.    Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown.  Defendants also knew, or should have known, that

COMPLAINT                                                                              Page 49 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 49 of 63

Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer.

310.    Instead of providing mental health treatment for Gabby, Defendants ignored, neglected, and aggravated her mental health breakdown.

311.    Defendants engaged in conduct and omissions described herein in violation of 42 U.S.C. Section 1983. Defendants' action, and failure to act, in hiring, training, retention, supervision, and discipline of its employees was the moving force which caused the violation of Gabby's constitutional rights.

312.    Defendants' actions and inactions were deliberately indifferent to the rights, privileges, and immunities of Gabby Chipps under the Eighth and/or Fourteenth Amendments of the United States Constitution.

313.    As a direct result of the collective actions and inaction of Defendants, Gabby Chipps suffered serious and permanent bodily injuries.

314.    As a direct result of the conduct and omissions of Defendants, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

315.    As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' constitutional rights.

COMPLAINT                                                                                    Page 50 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 50 of 63

Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## THIRD CAUSE OF ACTION

### (42 U.S.C. Section 1983—Policy, Custom, or Practice Causing Violation of Civil Rights Against Defendant State of Alaska, Department of Corrections)

316. Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

317. Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action, as if fully set forth herein.

318. At all times relevant to this complaint, Defendant State of Alaska, Department of Corrections was a public entity, organized and operating pursuant to the laws of the State of Alaska.

319. Defendant engaged in conduct and omissions described herein in violation of 42 U.S.C. Section 1983.

320. Among other things, Defendant was on notice, more than 10 years prior to this incident, that its own policies and practices were in violation of national standards and protocols regarding the need for continual monitoring and providing mental health and medical care for inmates on suicide precautions in segregation housing. Defendant was aware that continuing in these dangerous policies and practices in violation of its own suicide prevention policies deprives inmates, including Gabby Chipps, of their constitutional rights. In persisting in these policies and procedures in violation of federal

COMPLAINT                                                                                          Page 51 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 51 of 63

standards and SOA, DOC Suicide Prevention policies, Defendant acted in reckless disregard to the constitutional rights of Gabby Chipps, and caused serious permanent injuries to Gabby.

321. Over the course of more than 10 years prior to this incident, Defendants policies and practices have put the health and safety of inmates, including Gabby Chipps, in serious jeopardy, which policies and practices include, but are not limited to, the following:

322. The 2010 ACLU report, the 2015 SOA, DOC Review and inmate deaths, and SOA, DOC's treatment of Gabby, demonstrate that SOA, DOC policies and practices are in violation of national standards, SOA, DOC's own policies, and in reckless disregard of the constitutional rights of Gabby Chipps.

323. Based on SOA, DOC policies and practices, a substantial number of inmates with suicide risk and mental illness are not appropriately assessed, evaluated, and treated pursuant to policy 807.20 to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

324. SOA, DOC policies and practices are to house inmates with suicide risk and mental illness in isolation and unmonitored, through segregated housing, as a disciplinary measure, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

325. Under SOA, DOC policies and practices, inmates with suicide risk and mental illness that are placed in segregated housing are deprived of necessary mental health and medical care pursuant to policy 807.20, to avoid having to deal these inmates, and

COMPLAINT                                                                                    Page 52 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 52 of 63

purely for convenience of the staff, despite the known serious risks this poses to the inmates.

326. Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown. Defendants also knew, or should have known, that Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer.

327. Instead of providing mental health treatment for Gabby, Defendants ignored, neglected, and aggravated her mental health breakdown.

328. Defendants' actions and inaction were deliberately indifferent to the rights, privileges, and immunities of Gabby Chipps under the Eighth and/or Fourteenth Amendments of the United States Constitution.

329. As a direct result of the collective actions and inaction of Defendants, Gabby Chipps suffered serious and permanent bodily injuries.

330. As a direct result of the conduct and omissions of Defendant, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

331. As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' constitutional rights.

COMPLAINT                                                                                           Page 53 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 53 of 63

Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## FOURTH CAUSE OF ACTION

### (42 U.S.C. Section 1983—Loss of Fundamental Parental Right to Companionship and Society Against All Defendants)

332.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

333.    Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action, and the Third Cause of Action above, as if fully set forth herein.

334.    Based on Defendants' actions and inaction, Plaintiffs Holly Chipps and Timothy Chipps have suffered a loss of their fundamental parental right to companionship and society regarding Gabby Chipps, and Holly and Timothy Chipps' relationship has been fundamentally and permanently altered with Gabby Chipps.

335.    Defendants' actions and inaction were deliberately indifferent to the rights, privileges, and immunities of Holly and Timothy Chipps under the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment of the United States Constitution.

336.    As a direct result of the conduct and omissions of Defendants, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general,

COMPLAINT                                                                                                    Page 54 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 54 of 63

special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

337.    As a direct result of the conduct and omissions of Defendants, Holly Chipps and Timothy Chipps have suffered, and will continue to suffer permanent loss of their fundamental parental right to companionship and society regarding Gabby Chipps.

338.    As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps, Holly Chipps, and Timothy Chipps' constitutional rights.  Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## **FIFTH CAUSE OF ACTION**

### **(Reckless Breach of Standard of Care by Health Care Provider Against Defendant State of Alaska, Department of Corrections)**

339.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

340.    A special relationship existed between Gabby Chipps and the State of Alaska, Department of Corrections whereby SOA, DOC acted as a health care provider when it took custody and control of Gabby Chipps.

341.    By acting as Gabby Chipps' health care provider, SOA, DOC owed Gabby a duty to provide the degree of care ordinarily exercised by a health care provider in caring for an individual experiencing a mental health breakdown.

COMPLAINT                                                                                          Page 55 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 55 of 63

342.    Immediately upon her arrival at WPT on January 22, 2020, SOA, DOC personnel placed Gabrielle on suicide precautions and restricted her from being in possession of any sharps or razors that she could use to harm herself with.

343.    SOA, DOC employees Shannon McCloud, James Milburn, Beth Selby, and Gerad Siamani, were each aware of facts that would lead a reasonable individual with their responsibilities and training to recognize that Gabby Chipps was a high suicide risk on, and before, February 8, 2020, following the series of incidents that led to her serious mental breakdown since she arrived at Wildwood Pretrial Facility on January 22, 2020.

344.    SOA, DOC employees McCloud, Milburn, Selby, and Siamani each consciously and intentionally chose to take no action to address Gabby's high suicide risk in violation of national standards and protocols and SOA, DOC suicide prevention policies and procedures.

345.    In choosing to take no action to address Gabby's high suicide risk in violation of national standards and SOA, DOC policies, Shannon McCloud, James Milburn, Beth Selby, and Gerad Siamani acted so far below the standard of care ordinarily exercised by a health care provider that they acted in reckless disregard to the safety of Gabby Chipps.

346.    As a direct and proximate result of Shannon McCloud, James Milburn, Beth Selby, and Gerad Siamani's individual and collective actions in reckless disregard to Gabby Chipps' safety, these SOA, DOC employees caused serious permanent injuries to Gabby Chipps by depriving her of medical care.

347.    SOA, DOC is vicariously liable for the reckless actions of its employees in causing serious permanent injuries to Gabby Chipps.

COMPLAINT                                                                    Page 56 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 56 of 63

## SIXTH CAUSE OF ACTION

### (Reckless Failure to Train Against Defendant State of Alaska, Department of Corrections)

348.   Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

349.   SOA, DOC knew, or should have known, that it would provide mental health and medical care for individuals at high risk for suicide.

350.   Defendant was on notice, more than 10 years prior to this incident, that its own policies and practices were in violation of national standards and protocols regarding the need for continual monitoring and providing mental health and medical care for inmates on suicide precautions in segregation housing.  Defendant was aware that continuing in these dangerous policies and practices in violation of its own suicide prevention policies deprives inmates, including Gabby Chipps, of their constitutional rights.  In persisting in these policies and procedures in violation of federal standards and SOA, DOC Suicide Prevention policies, Defendant acted in reckless disregard to the constitutional rights of Gabby Chipps, and caused serious permanent injuries to Gabby.

351.   Despite these circumstances, Defendant repeatedly failed to follow SOA, DOC suicide prevention policies and procedures, including, but not limited to, failures detailed in paragraphs for the Second Cause of Action, above.

352.   SOA, DOC knew, or should have known, that by failing to train, or failing to adequately train, its employees, there was a substantial risk that individuals in its custody and control, including individuals in circumstances similar to Gabby Chipps, would be

COMPLAINT                                                                                          Page 57 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 57 of 63

seriously and permanently injured, or die, from the failure to monitor and failure to provide adequate mental health and medical care.

353.     By choosing not to train, or adequately train, its employees, SOA, DOC acted in reckless disregard to the health and safety of individuals under its care, custody, and control, including Gabby Chipps.

354.     As a direct and proximate result of its reckless disregard, SOA, DOC caused serious permanent injuries to Gabby Chipps.

## SEVENTH CAUSE OF ACTION

**(Medical Negligence Against Defendant State of Alaska, Department of Corrections)**

355.     Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

356.     A special relationship existed between Gabby Chipps and the State of Alaska, Department of Corrections whereby SOA, DOC acted as a health care provider when it took custody and control of Gabby Chipps.

357.     By acting as Gabby Chipps' health care provider, SOA, DOC owed Gabby a duty to provide the degree of care ordinarily exercised by a health care provider in caring for an individual experiencing a mental health breakdown.

358.     SOA, DOC employees McCloud, Milburn, Selby, and Siamani each consciously and intentionally chose to take no action to address Gabby's high suicide risk in violation of national standards and protocols and SOA, DOC suicide prevention policies and procedures, and in doing so, breached the standard of care.

COMPLAINT                                                                                          Page 58 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 58 of 63

359.    As a direct and proximate cause of these breaches, Defendant SOA, DOC caused serious permanent injuries to Gabby Chipps.

## EIGHTH CAUSE OF ACTION

**(Negligent Training Against Defendant State of Alaska, Department of Corrections)**

360.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

361.    Defendant SOA, DOC knew or should have known that the training it provided to the employees attending to Gabby Chipps, and those supervising the employees attending to Gabby Chipps, resulted in these employees failing to understand their duties as detailed in paragraphs to the Second Cause of Action and Fifth Cause of Action, above.

362.    Defendant SOA, DOC breached the duties it owed to Gabby Chipps, and as a direct and proximate result of its breach of those duties, caused serious and permanent injuries to Gabby.

## NINTH CAUSE OF ACTION

**(Negligent Supervision Against Defendant State of Alaska, Department of Corrections)**

363.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

364.    Defendant SOA, DOC knew or should have known of the substandard level of understanding and conduct of its employees regarding the care of individuals in Gabby Chipps' circumstances, and the need for mental health and medical care, and was indifferent to and/or unaware of this substandard level of understanding and conduct.

COMPLAINT                                                                                          Page 59 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 59 of 63

365.    Defendant SOA, DOC owed a duty of care to train and supervise its employees to be aware of these responsibilities and this reckless or knowing indifference to its employees' ignorance regarding their responsibilities, including, but not limited to, Defendant's failure to supervise its own supervisors, was a proximate cause for the serious permanent injuries to Gabby Chipps.

## TENTH CAUSE OF ACTION

### (Negligence Against All Defendants)

366.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

367.    Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action through the Ninth Cause of Action above, as if fully set forth herein.

368.    Defendants knew or should have known of the substandard level of their understanding and conduct regarding Gabby Chipps' circumstances, and the need for mental health and medical care, and Defendants were indifferent to and/or unaware of this substandard level of understanding and conduct.

369.    Defendants breached their duties owed to Gabby Chipps, and as a direct and proximate result of the breach of these duties, caused serious and permanent injuries to Gabby.

COMPLAINT                                                                                          Page 60 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 60 of 63

## ELEVENTH CAUSE OF ACTION

### (Vicarious Liability State of Alaska)

370.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

371.    Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action through the Tenth Cause of Action above, as if fully set forth herein.

372.    Employees and/or agents of the State of Alaska were acting within the scope of employment at the time of the above-described incidents and were negligent on the date in question.

373.    As a direct and proximate result of employee and/or agent actions, Plaintiffs suffered damages.

374.    In addition to individual liability, the State of Alaska is vicariously liable for the conduct of its employees and/or agents.

## TWELFTH CAUSE OF ACTION

### (Parental Loss of Consortium)

375.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

376.    Because of Gabby's severe and permanent injuries resulting from Defendants' actions, Holly and Timothy Chipps have sustained a loss of consortium in the parent-child relationship, including loss of society, aid, assistance, companionship, comfort, love affection, and solace.

COMPLAINT                                                                    Page 61 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.

Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 61 of 63

## PRAYER FOR RELIEF

WHEREFORE, having pled Plaintiffs' complaint, Plaintiffs requests a judgment against Defendants as follows:

1.  For general and consequential damages in an amount to be determined at trial on all causes of action.

2.  For special damages to be ascertained according to proof and determined at trial on all causes of action.

3.  For loss of consortium damages.

4.  For reasonable attorney's fees, expert fees, and costs as allowable by law.

5.  For interest as allowable by law.

6.  For punitive damages as allowable by law.

7.  For such other relief as the Court may deem just and proper.

8.  Plaintiff reserves the right to amend this complaint.

DATED at Anchorage, Alaska this 21st day of January, 2021.

LIBBEY LAW OFFICES, LLC
Attorneys for Plaintiff Gabrielle Chipps

By: ___ s/Daniel Libbey _____
Daniel Libbey (0012105)

DATED at Anchorage, Alaska this 21st day of January, 2021.

LIBBEY LAW OFFICES, LLC
Attorneys for Plaintiff Holly Chipps

By: ___ s/Colleen Libbey _____
Colleen Libbey (0012104)

COMPLAINT                                                                                    Page 62 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 62 of 63

DATED at Anchorage, Alaska this 21st day of January, 2021.

SYREN LAW OFFICES, LLC
Attorneys for Plaintiff Timothy Chipps

By: ___s/Lester Syren_____
      Lester Syren (8911081)

COMPLAINT                                                                    Page 63 of 63
Chipps, et al. vs. State of Alaska, Dept. of Corrections, et al.
Case 3:21-cv-00011-JMK   Document 1   Filed 01/21/21   Page 63 of 63